995 F.2d 1064
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sam ROBINSON, Plaintiff-Appellant,
v.
LADD FURNITURE, INC., a North Carolina Corporation;
American Drew, a North Carolina Corporation,
Defendants-Appellees.
 No. 92-2286.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 1, 1993
Decided: June 14, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CA-92-273-2)
 Andrew Dean Morrison, Beverly Hills, California, for Appellant.
 Louis Whittier Doherty, Petree, Stockton, Winston-Salem, North Carolina, for Appellees.
 Penni P. Bradshaw, Petree, Stockton, Winston-Salem, North Carolina; F. Joseph Treacy, Jr., Petree, Stockton Charlotte, North Carolina, for Appellees.
 M.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before RUSSELL and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 The claims in this case arise out of American Drew's termination of an independent sales representative agreement with Sam Robinson. The district court dismissed Robinson's claims under Federal Rule of Civil Procedure 12(b)(6), holding that the agreement was enforceable and its terms foreclosed Robinson's causes of action for breach of an oral, implied-in-fact contract and for age discrimination in violation of California law. We agree with the district court's conclusion that the written contract between the parties forecloses any claim for breach of an oral contract. We differ, however, with the district court's decision to apply the contractual choice of law provision to Robinson's statutory and tort claims. Accordingly, we remand for further consideration of these claims under North Carolina choice of law principles.
 
 I.
 
 2
 Sam Robinson resides in California and until October 1991, he sold furniture for American Drew[1] in Arizona and the southern regions of Nevada and California. Robinson signed an independent sales representative agreement with American Drew which, among other things, provided that he was an independent contractor, that the agreement was governed by North Carolina law, that any disputes under the agreement were to be resolved in North Carolina courts, that all prior agreements of the parties were revoked with the execution of the agreement, and that the agreement could only be modified in writing.
 
 
 3
 On September 6, 1991, American Drew exercised its option to terminate the agreement and provided the requisite thirty days notice. As a consequence, Robinson's relationship with American Drew as a sales representative ended on October 6, 1991, when he was sixty-nine years of age. Robinson alleged that he was replaced by a younger sales representative.
 
 
 4
 Robinson initially filed a complaint in California state court alleging wrongful termination in violation of California public policy and breach of an oral employment agreement to terminate him only for good cause.[2] American Drew removed the action to California federal district court on the basis of diversity jurisdiction. American Drew then filed a motion to dismiss for lack of venue under Federal Rule of Civil Procedure 12(b)(3). The motion sought enforcement of a forum selection clause in the sales agreement which specified that any dispute arising under the agreement "shall be resolved by the courts within North Carolina." (J.A. at 102.) After briefing and a hearing, the California federal district court enforced the clause and dismissed the entire case.
 
 
 5
 Robinson then refiled his case in federal district court in North Carolina. In the North Carolina complaint, Robinson alleged a violation of California's Fair Employment and Housing Act, Cal. Govt. Code § 12941(a) (West 1992), as well as termination in violation of the public policy of California and breach of an oral employment contract.
 
 
 6
 American Drew moved to dismiss the case under Rule 12(b)(6) because the sales agreement specified that North Carolina law, rather than California law, was applicable to any claims Robinson may have, and because the breach of oral contract claim was barred by a clause in the agreement stating that all prior agreements were revoked. The district court dismissed the breach of oral contract claim with prejudice and dismissed the age discrimination claims with leave to refile under North Carolina law. Robinson appeals.
 
 II.
 
 7
 We review de novo dismissals for failure to state a claim upon which relief can be granted. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989). We apply the legal standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In so doing we construe the claims in the light most favorable to the non-moving party and take its allegations as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).
 
 A. Breach of Oral Contract
 
 8
 We first address the propriety of the dismissal of Robinson's breach of an oral contract claim. Robinson contends that in terminating his employment relationship, American Drew breached an oral, implied-in-fact employment agreement which provided that he could only be terminated for good cause. This oral contract claim is based on an alleged agreement between the parties prior to the execution of the written agreement. The key question we must resolve regarding this claim is whether the independent sales representative agreement is enforceable. The sales agreement explicitly provides that it supersedes all prior agreements, whether written or oral; therefore, if the agreement is enforceable, Robinson's claim was properly dismissed. Robinson contends that the agreement is not enforceable because it lacked consideration.
 
 
 9
 The district court concluded that the agreement was enforceable because of the collateral estoppel effect of the California district court's order dismissing the case for lack of venue. According to the district court, the California court's enforcement of the forum selection provision implicitly determined that the contract was enforceable and Robinson was precluded from relitigating the enforceability issue in the North Carolina court. Even if the California court implicitly determined that the contract was enforceable for purposes of deciding the proper forum, this determination does not preclude Robinson from challenging American Drew's motion to dismiss.
 
 
 10
 In demonstrating collateral estoppel, American Drew bore the burden of proving that: (1) Robinson had a full and fair opportunity to litigate the enforceability of the contract earlier in the case; (2) the California district court actually determined that the contract was enforceable; and (3) the California court necessarily decided that the contract was enforceable. See Combs v. Richardson, 838 F.2d 112, 114 (4th Cir. 1988). We do not believe that these elements were satisfied here.
 
 
 11
 First, Robinson did not have a full and fair opportunity to litigate the contract question because he bore the burden in the California action of proving that the court had jurisdiction, whereas in the Rule 12(b)(6) proceeding the burden of proof was on American Drew. As we stated in Newport News Shipbuilding & Dry Dock Co. v. Director OWCP, 583 F.2d 1273, 1279 (4th Cir. 1978), cert. denied, 440 U.S. 915 (1979):
 
 
 12
 Relitigation of an issue is not precluded by the doctrine of collateral estoppel where the party against whom the doctrine is invoked had a heavier burden of persuasion on that issue in the first action than he does in the second, or where his adversary has a heavier burden in the second action than he did in the first.
 
 
 13
 Secondly, the issue was not actually determined or necessarily litigated because the determination of the enforceability of a venue provision for purposes of a Rule 12(b)(3) motion is a matter of federal law and the enforceability of a contract is a matter of state law. Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988). Indeed, under Ninth Circuit precedent"forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or over-reaching." Id. at 514 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Thus, the California court did not have to find that the entire contract was enforceable to apply the forum selection clause; it only had to find that a prima facie case of enforceability had been shown for venue determination. Here, American Drew has to prove enforceability, not merely a prima facie case, in order to prevail. For these reasons, collateral estoppel is not an appropriate basis for concluding that the agreement is enforceable.
 
 
 14
 Nevertheless, it is clear from the pleadings that the sales agreement is enforceable under North Carolina law. Generally, for purposes of evaluating a motion to dismiss under Rule 12(b)(6) the court is limited to a review of the allegations in a complaint. However, the complaint includes any document which is attached to it as an exhibit, Fed. R. Civ. P. 10(c), or incorporated into it by reference, Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985). In this case, Robinson specifically referred to the independent sales representative agreement in discussing his breach of an oral, implied-in-fact contract claim in paragraph 26 of the complaint. Therefore, in reviewing the propriety of the district court's grant of American Drew's motion to dismiss, we will also consider the provisions of the agreement.
 
 
 15
 It is clear from the complaint itself that there is adequate consideration for the sales agreement to be enforceable. Robinson admits that he continued working for American Drew after signing the agreement. Continuance of an employment relationship is sufficient consideration for an employment agreement in North Carolina to be enforceable. See Fraver v. North Carolina Farm Bureau Mut. Ins. Co., 318 S.E.2d 340, 344 (N.C. Ct. App.), cert. denied, 322 S.E.2d 1555 (N.C. 1984). Because the independent sales representative agreement is enforceable, we must give effect to the provision in the contract which states that the contract constitutes the entire agreement between the parties and revokes all prior agreements. Enforcement of this provision directly forecloses Robinson's breach of an oral contract claim. Because enforceability is evident from the face of the complaint, we hold that dismissal of this claim under Rule 12(b)(6) was appropriate.
 
 B. California Age Discrimination Claims
 
 16
 As outlined above, we agree with the district court's conclusion that the independent sales representative agreement is enforceable. At first blush, this conclusion seems to support the district court's dismissal of Robinson's California claims because it necessarily follows that the parties' choice of North Carolina law is also enforceable. Indeed, under North Carolina law if parties to a contract have agreed that a certain state's substantive law will govern the interpretation of their contract, then the contractual provision will be given effect, Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980), as long as the state chosen has a substantial relationship with the parties, or the transaction, or both. Boone v. Aeronca, Inc., 669 F. Supp. 1353, 1359 (W.D.N.C. 1987). Because the contract was enforceable and North Carolina courts generally enforce choice of law provisions, the district court held that the parties' contractual choice of North Carolina law foreclosed Robinson's claims under California law.
 
 
 17
 Such a conclusion, however, overlooks a fundamental step in the analysis. In this case, the contractual choice of law provision states:
 
 
 18
 This Agreement, its execution, interpretation and performance shall be governed by the laws of the State of North Carolina.
 
 
 19
 (J.A. at 94.) It is not enough simply to decide that this clause is enforceable in the abstract; we must also determine whether it is enforceable against these particular claims. The key question we must resolve is whether Robinson's claims of age discrimination in violation of the California Fair Employment and Housing Act and California public policy involve the "execution, interpretation and performance" of the sales agreement.
 
 
 20
 The sales agreement certainly delineates the parameters of the relationship between American Drew and Robinson as well as their respective rights and responsibilities. Because of this, the argument could be made that any claim which arises between American Drew and Robinson would be governed by the agreement. We do not believe, however, that under Fourth Circuit and North Carolina precedent this argument can carry the day.
 
 
 21
 Liability for Robinson's age discrimination claim under the California Fair Employment and Housing Act arises from the statute itself, Cal. Govt. Code § 12941(a), and the liability for his wrongful termination in violation of public policy claim arises from tort law, rather than contract. See Foley v. Interactive Data Corp., 765 P.2d 373, 377 (Cal. 1988) (discussing the development of the tort of wrongful termination in violation of public policy); Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 447 (N.C. 1989) (establishing the tort of wrongful discharge in North Carolina). As such, the liability to be imposed is ex delicto rather than ex contractu and the contractual choice of law provision governs only if an issue of contractual construction, interpretation, or enforceability is raised. ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 50 n.11 (4th Cir. 1983), supp. op., 742 F.2d 170 (4th Cir. 1984) (per curiam), cert. denied, 469 U.S. 1215 (1985); see also United Virginia Bank v. Air-Lift Assoc., Inc., 339 S.E.2d 90, 93 (N.C. Ct. App. 1986) (finding the interpretation of North Carolina law in ITCO persuasive).
 
 
 22
 In ITCO, the plaintiff alleged that Michelin's decision not to renew its dealership agreement with it constituted anticompetitive behavior in violation of the North Carolina Unfair Trade Practices Act. ITCO, 722 F.2d at 45. We noted that the claims under the statute involved ex delicto rather than ex contractu liability; presented "[n]o issue of contractual construction, interpretation, or enforceability;" and were predicated upon actions "separate and distinct from the Dealer Sales Agreement." Id. at 50 n.11.
 
 
 23
 We reached a similar conclusion in Glaesner v. Beck/Arnley Corp., 790 F.2d 384, 386 n.1 (4th Cir. 1986), with regard to claims that a distributorship agreement was wrongfully terminated in violation of South Carolina tort law and the South Carolina Unfair Trade Practices Act. We noted that the plaintiff had alleged liability in tort, rather than in contract, that the nature of liability was " ex delicto, not ex contractu," and that "[n]o issue of contractual construction, interpretation, or enforceability" was raised in the case. Id. (quoting ITCO, 722 F.2d at 50 n.11). The argument could have been made in both ITCO and Glaesner that the terms of the dealership or distributorship agreements would be directly relevant to the wrongful termination claims, but we still declined to apply the contractual choice of law provisions in these actions.
 
 
 24
 North Carolina federal district courts have similarly rejected the application of contractual choice of law provisions to any actions which do not specifically arise out of the contract. In United Dominion Industries, Inc. v. Overhead Door Corp., 762 F. Supp. 126, 127 (W.D.N.C. 1991), the plaintiff alleged that Overhead Door breached an asset purchase agreement through various misstatements, concealments, and overstatements regarding the company purchased by plaintiff. Among the causes of action alleged was a claim for damages for unfair and deceptive trade practices under a North Carolina statute. Id. Overhead Door argued that Texas rather than North Carolina law was applicable because of a choice of law provision stating that the contract between the parties would be governed and construed in accordance with laws of Texas applicable to the making and performance of contracts. Id. The court concluded that while this provision may govern the choice of law as to the interpretation and construction of the contract, it did not provide the applicable law for the statutory claim because the nature of the liability was not contractual. Id. at 128; see also FDIC v. British-American Corp., 755 F. Supp. 1314, 1325 (E.D.N.C. 1991) ("Plaintiffs' fraudulent conveyance claim is not founded on the construction or interpretation of the contract, but rather, on whether the contract could have, by itself, caused a legal transfer ... [t]hus, the choice of law provision is irrelevant."); Simms Inv. Co. v. E.F. Hutton & Co., 688 F. Supp. 193, 195 (M.D.N.C. 1988), reconsideration granted, 699 F. Supp. 543 (M.D.N.C. 1988) (misrepresentations and omissions of fact in order to induce plaintiff to enter a joint venture agreement were essentially actions for fraud, and the choice of law provision in the joint venture agreement was inapplicable to the fraud claims).
 
 
 25
 We believe that the choice of law provision in the agreement is similarly inapplicable to Robinson's age discrimination claims. The duty violated by the alleged age discrimination arises out of statute and tort, not from any provision of the sales agreement. Moreover, interpretation, application, or construction of the independent sales representative agreement is not required to determine whether American Drew's termination of the agreement constituted age discrimination. Therefore, we conclude that although the contract is enforceable, the choice of law provision does not control with regard to Robinson's age discrimination claims. As a result, we remand for the district court to apply North Carolina choice of law principles to determine whether North Carolina law is applicable to Robinson's claims.[3]
 
 
 26
 American Drew also contends that Robinson's claim under the California Fair Employment and Housing Act was properly dismissed because he is an independent contractor rather than an employee. It is correct that in Lumia v. Roper Pump Co., 724 F. Supp. 694, 697 (N.D. Cal. 1989), a California federal district court specifically held that California's anti-discrimination statute does not cover independent contractors.[4] It is also correct that paragraph 111 of the sales agreement provides that "[i]t is acknowledged and agreed that Representative [Robinson] is and shall be ... an independent contractor and not an employee or other agent of the Company." (J.A. at 92.) While this contractual provision is certainly relevant to whether Robinson is an independent contractor, this is a factual inquiry which is not appropriately resolved on a Rule 12(b)(6) motion. See Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981 (4th Cir. 1983) (whether an individual is an employee "is properly determined by analyzing the facts of the employment relationship"); see also Rolick v. Collins Pine Co., 925 F.2d 661, 665 (3d Cir. 1991) (" 'courts will not be controlled by the nomenclature the parties apply to their relationship' ") (citation omitted); Judy v. Tri-State Motor Transit Co., 844 F.2d 1496, 1505 (11th Cir. 1988) ("the fact that a contract may characterize a worker as an independent contractor rather than as an employee is not of controlling significance"). Robinson's complaint alleges that he is an employee, and on remand he is entitled to offer evidence that while the agreement specifically delineates that he is an independent contractor, the parties' conduct demonstrates the contrary. Because dismissal of these claims under Rule 12(b)(6) was inappropriate, we reverse the dismissal of Robinson's age discrimination claims.
 
 III.
 
 27
 In light of the foregoing discussion, we affirm the district court's dismissal of Robinson's claim for breach of oral contract, reverse the dismissal of his age discrimination claims under California statute and public policy, and remand for further proceedings consistent with this opinion.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 [1]
 American Drew, a furniture manufacturer and distributor, is an unincorporated division of Ladd Furniture, Inc., a North Carolina Corporation. Both American Drew and Ladd Furniture have their offices and principal places of business in High Point, North Carolina
 
 
 [2]
 This initial complaint also contained a cause of action under California's Unruh Act, California Civil Code § 51, which was later dismissed by stipulation of the parties
 
 
 [3]
 American Drew urges us to decide that under the applicable North Carolina choice of law principles for torts, these claims would be governed by North Carolina law because it has the most significant relationship to the action. See New England Leather Co. v. Feuer Leather Corp., 942 F.2d 253, 255-56 (4th Cir. 1991) (discussing North Carolina's two different approaches to determining choice of law questions with regard to tort claims). We decline to take this approach because American Drew raises these arguments for the first time on appeal. In addition, we believe remand is a more appropriate course because each party will be able to establish through affidavits or other evidence whether the place of injury is California or North Carolina or which state has the most significant relationship to this action
 
 
 [4]
 The court in Lumia also dismissed the plaintiff's common law cause of action for 'wrongful discharge' on the basis of age discrimination on the ground that it was preempted by the California Fair Employment and Housing Act. 724 F. Supp. at 697